AO 241
REV 6/82

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

06-0721
SECT.S MAG6

| United States District Court | District Eastern |
|---|---|

| Name NATHANIEL LAMBERT | Prisoner No. 90883 | Docket No: |
|---|---|---|

Place of Confinement

LA. STATE PENITENTIARY

FILED   FEB 1 3 2006

| Name of Petitioner (include name upon which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|

LORETTA G. WHYTE
CLERK

NATHANIEL LAMBERT    v.    Burl Cain, Warden

The Attorney General of the State of: Charles Foti

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  Orleans Criminal District Court

2. Date of judgment of conviction  August 11, 1997

3. Length of sentence:  Two Life sentences and fifteen years

4. Nature of offense involved (all counts)  Aggravated Rape, Aggravated Crime Against Nature, Aggravated Burglary

5. What was your plea? (Check one)
   (a) Not guilty  ☑
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. Kind of trial: (Check one)
   (a) Jury  ☑
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

Fee
Process
Dktd
CtRmDep
Doc. No

AO 241
REV 6/82

9. If you did appeal, answer the following:

  (a) Name of court _Fourt Circuit Court of Appeal_

  (b) Result _Conviction Affirmed, Sentences Vacated, Remanded for Resentencing (pending)_

  (c) Date of result _November 17, 1999_

  (d) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☑ No ☐

11. If your answer to 10 was "yes," give the following information:

  (a) (1) Name of court _Orleans Parish Criminal District Court, Court of Appeal, Fourth Circuit, La. Supreme Ct._

  (2) Nature of proceeding _Post Conviction_

  (3) Grounds raised _Ineffective Assistance of Counsel, Involuntary Statement resulting from_
  _Intoxication_

  (4) Did you receive an evidentiary hearing on your petition, application or motion?
  Yes ☑ No ☐

  (5) Result _Claims denied Relief_

  (6) Date of result _April 20 - 2004_

  (b) As to any second petition, application or motion give the same information:

  (1) Name of court

  (2) Nature of proceeding

(2)

AO 241
REV 6/82

(3) Grounds raised _____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(c)  As to any third petition, application or motion, give the same information:
(1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.      Yes ☐   No ☐
(2) Second petition, etc.      Yes ☐   No ☐
(3) Third petition, etc.      Yes ☐   No ☐

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241
REV 6/82

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: _Ineffective Assistance of Counsel_

Supporting FACTS (tell your story *briefly* without citing cases or law):

_See Attached Memorandum of Law_

B. Ground two: _Involuntary Statement due to Intoxication_

Supporting FACTS (tell your story *briefly* without citing cases or law):

_See Attached Memorandum of Law_

AO 241
REV 6/82

   C.   Ground three: _None_ _____

   _____

   Supporting FACTS (tell your story *briefly* without citing cases or law): _____

   _____

   _____

   _____

   _____

   _____

   D.   Ground four _None_ _____

   _____

   Supporting FACTS (tell your story *briefly* without citing cases or law): _____

   _____

   _____

   _____

   _____

   _____

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

   _____

   _____

   _____

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
      Yes ☐   No ☐

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
      (a)   At preliminary hearing _____

      _____

      (b)   At arraignment and plea _____

      _____

AO 241
REV 6/82

(c)  At trial _____

(d)  At sentencing _____

(e)  On appeal _____

(f)  In any post-conviction proceeding _____

(g)  On appeal from any adverse ruling in a post-conviction proceeding _____

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☑  No ☐

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☑
(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

(b)  Give date and length of the above sentence:_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐   No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____
(date)

_____
Signature of Petitioner

(7)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

NO.:_____

### NATHANIEL LAMBERT,

*PETITIONER*

### VERSUS

### BURL CAIN,

*RESPONDENT*

---

**APPLICATION FOR WRIT OF HABEAS CORPUS AND MEMORANDUM OF LAW FROM DENIAL OF POST CONVICTION RELIEF ORIGINATING IN THE ORLEANS CRIMINAL DISTRICT COURT, ORLEANS PARISH, LOUISIANA, NUMBER 387-752, HONORABLE JUDGE FRANK A. MURULLO, PRESIDING.**

---

RESPECTFULLY SUBMITTED:

NATHANIEL LAMBERT #90883
(*IN FORMA PERSONA*)
Camp J, SHARK-3-L-12
LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

i

## TABLE OF CONTENTS

PAGE NUMBER:

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

Law and Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Claim #1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Claim #2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## APPENDICES

APPENDIX - A:   Louisiana Supreme Court Ruling PCR, August 19, 2005

APPENDIX - B:   PCR Supervisory Writ to Fourt Circuit Decision October 4, 2004

APPENDIX - C:   Trial Court Decision PCR - March 28, 2001

APPENDIX - D:   Louisiana Supreme Court Decision on Direct Appeal - February 2, 2001

APPENDIX - E:   Fourth Circuit Court of Appeals Decision on Direct Review 11/17/99

APPENDIX - F:   NINE LETTERS TO DISTRICT COURT- ASKING FOR RULEING OF P.C.R.

APPENDIX - G:   THREE LETTERS- ONE TO 4th CIRCUIT- TWO - TO LOUISIANA SUPREME COURT.

# TABLE OF AUTHORITIES

PAGE NUMBER:

UNITED STATES CONSTITUTION:

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 12

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

FEDERAL STATUTES:

28 U.S.C. 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FEDERAL CITATIONS:

*Bryan vs Scott, 2*8 F.3d 1411 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966) . . . . . . . . . . . . 13, 15

*Nealy v. Cabana*, 764 F.2d 1173-1177 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Strickland v. Washington, 466, U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674* . . . . . . . . . . . . . . 6, 9

*Sullivan, 819 F.2d at 1389* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) . . . . . . . . . . 9, 10

*Toomey v. Burnell*, 898 F.2d 741, 744 n.2 (9th Cir.), cert. denied, __ U.S. __, 111, S.Ct. 390 . 10

*Anders v. California*, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967) . . . . . . 10

*Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) . . . . . . . . . . . . . . . . . . . . 10

*Childress v. Johnson*, 103 F.3d 1221 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . *10, 11*

*Cracker v. McCotter*, 805 F.2d 538 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Swanson*, 943 F.2d 1070, 1075 (9th Cir, 1991) . . . . . . . . . . . . . . . . . . . . . 11

*Rose v. Clark*, 478 U.S. at 577-578, 106 S.Ct. At 3106 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LOUISIANA STATUTES:

Constitution Article 1, Section 13 ............................................ 4, 6

C.Cr.P., Art. 703(C) ........................................................ 12

LSA-R.S. 14:37 ............................................................ 16

R.S. 15:451 ............................................................... 12

LOUISIANA CITATIONS:

*State v. West*, 408 So.2d 1032 (La. 1982) ...................................... 12

*State v. Vacorro*, 411 So.2d 415, 425 (La. 1982) ............................... 13

*State v Kersey*, 406 So.2d 555 (La. 1980) .................................. 13, 14

*State v. Robinson*, 384 So.2d 332 (La. 1980) .................................. 13

*State v Rankin*, 357 So.2d 803 (La.1978) ..................................... 16

*State v. Stein*, 874 So.2d 279 ............................................... 13

## STATEMENT OF ISSUES

ISSUE                                                                    PAGE NUMBER:

I.

    PETITIONER SUBMITS THAT HIS TRIAL COUNSEL VIOLATED HIS RIGHTS PURSUANT THE ARTICLE 1 SECTIONS 2, 13, &16 OF THE LOUISIANA CONSTITUTION AMD THE UNITED STATES CONSTITUTION 5TH, 6TH & 14TH AMENDMENT.

    A.

    COUNSEL FAILED TO CALL TWO MATERIAL WITNESSES. . . . . . . 4

    B.

    COUNSEL FAILED TO ESTABLISH THAT PETITIONER WAS INTOXICATED AT THE TIME OF HIS ARREST AND THAT HIS STATEMENT WAS NOT FREELY AND VOLUNTARILY GIVEN. . . . . 12

II.

    PETITIONER WAS INTOXICATED AT THE TIME OF HIS ARREST THUS HIS CONFESSION WAS NOT FREELY AND VOLUNTARILY GIVEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATEMENT OF JURISDICTION

Jurisdiction vests in this Honorable Court pursuant to the provisions of 28 U.S.C. 2254, et. al.

## STATEMENT OF THE CASE

Petitioner was charged by an Orleans Parish grand jury in a multiple count indictment, the incident for which petitioner was indicted involved 1 victim.  Prior to trial, several statements were made by police officers which were benefitting to the accused, yet, counsel did failed to pursue this line of defense.  The charge at issue in this matter concerned one single incident, involving one victim.

New Orleans police Officer Daniel Jewel testified that art approximately 2:23a.m. on January 7, 1997 he and Officer Richard Bonay responded to a report of an aggravated burglary at 2326 Louisiana Avenue.  The victim was visibly upset but appeared "rather calm."  Ernestine "Tina" Taylor escorted the officers to the back of the residence where petitioner was lying on the bed asleep, completely naked except for his shoes and socks.   When the officers turned on the lights, officer Jewel notice a hammer within petitioner's reach, picked it up and moved it to the next room.   Officer Jewel testified, "we attempted to wake him up.  We positioned ourselves properly in case he did jump up.  We woke him up.  He was kind of out of it." T.Tr. Pg. 23-24. I though he was kind of drunk or on drugs at the time, just the way he was acting really.  He was kind of like coming off a high or something.  We asked him, 'what are you doing?'  Because we really didn't know what was happening.  I mean we get call sometimes and it just might be a domestic dispute, you know they might befriend and girlfriend.  Did you ask him anything?  Yeah, what are you doing?  And he said something like, "sleep with my girlfriend" or something like

1

that.  So, I said "really" where are you.  And he said that he was in the Holly grove area, which is completely across the District.  I said, "well, you are on Louisiana Avenue.  He was like, "No, I am not."  I said, "what's your girlfriend name?"  He said, "Diane or something like that, to that affect.  I believe it was Diane.  We didn't know what the lady's name was, yet, because we just went in to secure the building first."   My partner or I -- I can't remember who asked her, but it was asked, what's your name?  And she said Tina.  Officer Jewel said that, based on his questioning of petitioner and the information from the victim, he did not know the victim and did not belong there.  Petitioner was ordered to put on his clothes and was handcuffed.  Officer Jewel admitted that petitioner did not resist arrest.

On August 15, 1997, petitioner was sentenced to life sentence and for the aggravated rape fifteen years for the aggravated crime against nature, and thirty years at hard labor for the aggravated burglary conviction.  Habitual Offender proceedings were instituted and the trial court vacated the original sentence for the aggravated burglary and thereafter sentenced the accused to another term of life imprisonment .  On November 17, 1999, the Fourth Circuit Court of Appeal affirmed petitioner's conviction and his sentences were vacated *(it should be noted that petitioner has never been re-sentenced after the sentences were vacated on appeal, thus, there is no legal order specifying the length nor the terms of his incarceration)*,  this has precluded petitioner from seeking appellate and post conviction review of his sentence.  Additionally, pursuant Louisiana Law, petitioner cannot legally file/apply for post conviction unless, both his sentence and conviction are final.  Since this is not true in the instant case, the Post Conviction litigation which has brought this case to this point is a nullity as provided bu Louisiana Law.  Petitioner sought a writ of certiorari in the Louisiana Supreme Court, which was denied on

February 2, 2001.

Petitioner next sought post-conviction relief from the judgment of conviction alleging several constitutional violations

Petitioner next filed an Application for Writ of Review seeking reversal of the District Court's denial of Post-Conviction Relief. The Appellate Court denied relief sought , Case No. 2004-K-1639. On August 19, 2005, the Louisiana Supreme Court denied relief, No. 2004-KH-2987. Petitioner now seeks issuance of a writ of certiorari to review the lower courts' denial of his direct appeal and post-conviction application.

<u>LAW AND ARGUMENTS</u>

### CLAIM #1

**PETITIONER SUBMITS THAT HIS TRIAL COUNSEL VIOLATED HIS RIGHTS UNDER LOUISIANA'S CONSTITUTION ARTICLE 1 SECTIONS 2, 13, & 16; THE UNITED STATES CONSTITUTION 5TH, 6TH & 14TH AMENDMENTS.**

The *Sixth Amendment to the United States Constitution* and *Article 1, Section 13 of the Louisiana Constitution* guarantee a petitioner in a criminal prosecution the right to be represented by counsel. Furthermore, the petitioner is guaranteed that such counsel will serve effectively and competently, and will perform certain duties necessary to adequately represent his client's interest. To deny a petitioner effective assistance of counsel has been viewed as akin to denying him any assistance at all.

By licence and through contract of employment, an attorney holds out to his client that he possesses certain minimal skills, knowledge, and abilities. He also holds out that he will fulfill his duties and obligations to his client diligently and competently. Unfortunate for the now convicted in the instant case, counsel did not honor his sworn duty nor his ethical duty to meaningfully defend his client to the best of his ability.

In the proceedings leading to the trial of this matter, Lambert (your petitioner) had informed counsel that he needed to contact, interview and subpoena Ms. Sheila Webb. At trial, Ms. Webb would have testified that:

> She had seen petitioner and the victim on January 6, 1997, prior to
> what has been alleged as a rape. That in fact, she stopped petitioner
> and Ernestine Taylor who had a hammer in her hand and that this
> was the same hammer introduced into evidence in the trial of this

4

matter. At the time this occurred, all the entire group was standing
in front of the door leading into the house of Ernestine Taylor (the
alleged victim).  During their brief conversation, petitioner told
(her) Ms. Webb that he was going with Ernestine to fix her door,
thereafter, (her) Ms. Webb called petitioner to the side and asked
the she be allowed to borrow $40.00 from him.  He gave her the
money and she watched as Ernestine (your alleged rape victim) and
your petitioner disappear into Ernestine's house together.

In an attempt to insure that justice would somehow meted out to this wrongly convicted
man, Ms. Webb, took it upon herself to write out the events she witnessed.  This is not a
witnesses who is recanting her testimony whereby the courts automatically view such recantations
with strict scrutiny, but rather, a concern witness trying to testify to events she witnesses which
are completely different from what the state's star witness and supporting witness testified to.
No one other than this person has come forth alleging that they witnesses the events prior to this
alleged rape.  And, if this testimony would have gone before the jury and was deemed credible by
the trial jury, then the jury would have also called into question the events  about who kicked in
Ernestine Taylor's back door.  If her boyfriend kicked in the door, and not your petitioner Mr.
Nathaniel Lambert, then the jury would question the reliability of Ernestine Taylor's testimony
because she will have given false testimony about how Nathaniel Lambert got into her residence.
At that point, Ms. Taylor would have had to fashion a reason for providing false testimony, as
well as give credible testimony as to why, in spite of having given a false story in relation to one
part of her allegations, that which remained should be deemed true.

Counsel in this case did not meet the standard of reasonable conduct and failed to uphold the obligation of diligence and competence imposed on him by the ***Sixth Amendment and Article 1, Section 13.***

The long settled standard of reviewing claims of ineffective assistance of counsel is the two prong test formulated in ***Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)***, in that a defendant must prove that his counsel's performance was deficient and this deficiency was prejudicial to the defense.

The contention of counsel's client was that the sex was consensual and that he did not kick the victim's back door, her boyfriend did. The testimony of the witness side-stepped by counsel would have revealed to the jury that Ernestine Taylor had the accused in her home as a guest, and he was instead to repair her door which someone else had kicked in. Instead of showing the now convicted Lambert the door which required repairs, Ms. Taylor inquired about whether Mr. Lambert had some drugs, which he did. At that point these two people engaged in smoking what is known as crack cocaine, and the matter escalated into sexual intercourse. Afterwards, Mr. Lambert fell asleep while Ms. Taylor probed through his clothing finding in excess of three hundred ($300) and concocted a way to get Mr. Lambert out the house without a fight in relation to the money she had stolen from his pockets.

Counsel did not request a shoe print analysis of the door to determine whether it matched the tennis shoes his client had on. Nor did he contact the witnesses like an attorney with a similar set of circumstances would do. It has long been held that, "The complete failure to investigate potentially corroborating witnesses. . . can hardly be considered a tactical decision." ***Sullivan, 819 F.2d at 1389; Nealy, 764 F.2d at 1178; Crips, 743 F.2d at 584. In Bryan vs. Scott, 28***

6

*F.3d 1411 (5th Cir. 1994)*, the court held when alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses and ascertain whether their testimony would aid the defense. *Id at 1415*. Petitioner is not asserting that these witnesses were present inside the house during the time frame of the alleged rape, but rather the witnesses call into question whether there is any truth in what Ernestine Taylor claims occurred.

Petitioner is contending that the testimonies of these two witnesses were corroborative and pertinent to the issue of consent. The testimony of the two witnesses would have corroborate the following facts:

**First Witness:**          **Sheila Webb**

A. That Ernestine Taylor knew petitioner (contrary to what she told officers)

B. That if the door needed repairing at the time Sheila Webb encountered the two (2), the back door of Ernestine's house had already been damaged. ( This makes petitioner innocent of kicking in the back door as Ernestine Taylor alleged).

C. The witness Sheila Webb also in her testimony would have given testimony substantiating that petitioner was a guest in the home of Ernestine Taylor.

Ms. Sheila Webb has gone to great lengths to restore justice in this instance where it has apparently gone awry. This concerned citizen has gone out of her way to see to it that the court knew the truth of what occurred. This critical witness wrote not only to the petitioner but also wrote to the judge who presided over the case to let it be know that the truth did not surface at trial. This witness wrote the Judge to the best of her ability and conveyed that she encountered the alleged rapist and the alleged victim, yet, at this time he (the alleged rapist) was in route with

7

the alleged victim to help repair a door which she later attributed to him having kicked in.  It is a little beyond belief that the same door got kicked in twice the same night by two different people and Ms. Taylor only call the police on the latter?

**Second Witness:**       **Winston Winn**

A.  On January 6, 1997, Mr. Winn met and engaged in conversation with Mr. Lambert in front of the "Sugar Record Shop".

B.  As the conversation ensued, Ernestine Taylor called out to petitioner, he responded by walking over to her and they engaged in conversation.

C. At the time Mr. Winn departed, Ernestine and Nathaniel Lambert "Nat were still talking.

The testimony of the aforementioned person would verify that unlike what Ernestine testified to, she was familiar with the accused and that she apparently knew him by name.  This is the second witness whose testimony would have showed the jury that Ernestine Taylor was quite familiar with petitioner and that this whole rape allegation was to cover up her robbery of petitioner as he lay sleep after having had consensual sex with her (Ernestine Taylor).  Counsel had been given the names, addresses and phone numbers of the witnesses who were vital to his defense pre-trial, as opposed to contacting and interviewing these witnesses, counsel turned on his client and successfully aided the prosecution in securing its conviction of the accused.  The witnesses and how to contact them became an issue on April 28, 1997, when petitioner submitted a witness list and included phone numbers on the list.

After petitioner submitted the list, the trial court questioned petitioner about each witness and as to what their testimony would be in relation to the case.  Through this ordeal, petitioner was made to surrender his entire defense over to the prosecution in open court, several moths

8

before trial. And through this, counsel for the accused knew how vital these witnesses were to his client's defense. Despite this, counsel did not interview either, refused to secure the presence of one, and encourage the only witnesses for the defense to leave and not return.

Ms. Ernestine Taylor testified that:

1. She had never saw petitioner until he broke into her home

The testimony of the witnesses established that on at least two occasions the alleged victim was found talking with the accused, in once instance she call out to him by name and later she talked with him in her doorway and invited him in through the front door of her home under the auspices of fixing her back door. The hammer was seen in her hand; contrary to her testimony that the hammer was used to break into her house, she was the person who originally had the hammer in her hand.

The testimony of both witnesses was favorable and material and the jury had a right to hear this testimony as it went to the base of the allegation and how petitioner ended up in the house with the alleged victim. The pretenses which the alleged victim used to lure him there. And this would have enabled the jury to be the fact finders they were intended to be. As a jury of one's peers, the jury is also vested with an obligations so that they to may insure justice is done when hearing a case. Because counsel excommunicated the defense witnesses, the jury never was able to hear all the facts so that they could ,make a decision consistent with a fair trial, due process and equal protection of the law.

In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided on the same date as *Strickland*, the Supreme Court created an exception to the *Strickland* standard for ineffective assistance of counsel and acknowledged that certain

circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed.   "*Cronic* presumes prejudice where there has been an actual breakdown in the adversarial process." *Toomey v. Bunnell, 898 F.2d 741, 744 n.2 (9th Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990).* In Cronic, the Supreme Court stated:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.' *Anders v. California, 386 U.S. 738, 743, (87 S.Ct. 1396, 1399, 18 L.Ed.2d 493) (1967).* The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing.  When a true adversarial criminal trial has been conducted - even if defense counsel may have made demonstrable errors - the kind of testing envisioned by the Sixth Amendment has occurred.  But if the process loses its character as a confrontation between adversarial, the constitutional guarantee is violated." *Cronic, 466 U.S. at 656-57, 104 S.Ct. at 2045-46.*

"The Court further explained that a constructive denial of counsel occurs when the defendant is deprived of 'the guiding hand of counsel.' *Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932),* cited in *Cronic, 466 U.S. at 660-61, 104 S.Ct. at 2047-48.*  Constructive denial will be found when counsel fails 'to subject the prosecution's case to meaningful adversarial testing. . . .' *466 U.S. at 659, 104 S.Ct. at 2047.* Accordingly, when the defendant can establish that counsel was not merely incompetent but inert, prejudice will be presumed." *Childress v. Johnson, 103 F.3d 1221 (5th Cir. 1997).*

In *Cracker v. McCotter, 805 F.2d 538 (5th Cir. 1986),* the United States Fifth Circuit Court of Appeal said:

> "A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Id. at 542.*

Jurisprudence from the Federal Circuit Courts, including the Fifth Circuit, establish that

constructive denial occurs "when a criminal defendant must navigate a critical stage of the proceedings against him without the aid of 'an attorney dedicated to the protection of his client's rights under our adversarial system of justice.' *United States v. Swanson, 943 F.2d 1070, 1075 (9th Cir. 1991)." Childress.*

Without the basic protections, a criminal trial cannot reliably serve its function as a vehicle for a determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. See, *Rose v. Clark, 478 U.S., at 577-578, 106 S.Ct., at 3106.*

In this vain, it is apparent that counsel's failure to subpoena defense witness Ms. Sheila Webb, so that she could testify to the events proceeding the alleged rape of Ms. Ernestine Taylor. And this version of events would have proven contrary to the allegations levied against Mr. Lambert by Ms. Taylor. Secondly, counsel was not satisfied with merely abandoning his client at a critical stage in the proceedings. Counsel went a step further an proceeded to betray his client in totality.

Trial counsel, according to the affidavit presented by Mr. Winston Winn, actually and deliberately ditched his client's defense. Mr. Winn appeared in court on the day of Mr. Lambert's trail, this was pointed out by Mr. Lambert. Counsel asked where was Mr. Winn? Petitioner responded, over there sleeping. Once pointed out, trial counsel proceeded over to Mr. Winn, woke him up, they talked and Mr. Winn left the courtroom. Upon counsel's return, Mr. Lambert, asked "Where did Winston go?" Counsel replied, "Mr. Winn had to go put a quarter in the meter where his car was parked and he'll be back before the trial started." Mr. Winn never returned and petitioner's trial ensued without a single witness on his behalf.

Later, Mr. Lambert was able to contact Mr. Winn and he inquired as to, "why he never

11

returned for the trial?" Mr. Lambert proceeded to convey that because no witnesses were there, he had been convicted. Mr. Winn replied, "Stop playing man -- you did not go to trial today. Petitioner responded, I am not playing man, they downed me in court. Mr. Winn then informed petitioner that attorney Power Miller (trial counsel) told him in court after having awaken him in court on the day of August 11, 1997. See Affidavit of Mr. Winston.

Petitioner has demonstrated herein that he was in fact denied effective assistance of counsel as guaranteed by the ***Sixth Amendment to the United States Constitution*** and ***Article 1, Section 13 of the Louisiana Constitution***. Counsel failed to perform in a manner that protected petitioner's constitutional rights to a full, fair, and impartial adversarial process. Counsel also failed to protect petitioner's right to Equal Protection of the laws and Due Process as prescribed bu the United States Constitution.

### B.   COUNSEL FAILED TO ESTABLISH THAT PETITIONER WAS INTOXICATED AT THE TIME OF HIS ARREST, AND THAT HIS STATEMENT WAS NOT FREELY AND VOLUNTARILY GIVEN

Petitioner was denied effective assistance of counsel at trial when his trial attorney failed to establish that petitioner was "intoxicated" at the time of his arrest, and that his statements were not freely and voluntarily given. It is a well settled principle of law that "before a confession can be admitted into evidence, it must be showed that it was made freely and voluntarily and not influenced by fear, duress, intimidation, menaces, threats, inducements or promise, ***La.C.Cr.P. 703(3)***; ***R.S. 15:451***, ***State v. West, 408 So.2d 1032 (La. 1982)***.

Before a confession can be admitted into evidence, the state has a burden of affirmatively showing that the statement was made freely and voluntarily. Furthermore, if the statement was

elicited during custodial interrogation, the state must show that the defendant was advised of his constitutional rights. *Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).*

As to the State of Louisiana, courts have long held that, "Intoxication can render a statement involuntary if the intoxication is of such a degree that it negates defendant's comprehension and renders him unconscious of the consequences of what he is saying." *State v. Vaccaro, 411 So.2d 415, 425 (La. 1982); State v. Kersey, 406 So.2d 555 (La. 1981); State vs. Robinson, 384 So.2d 332 (La. 1980); State v. Rankin, 357 So.2d 803 (La. 1978).* Whether intoxication exists and whether it is of a degree sufficient to vitiate the voluntariness of a confession are questions of fact. *State vs, Robinson*, supra.

Under Louisiana Law, voluntary intoxication is a defense only in situations where it precludes specific criminal intent or special knowledge required in a particular crime. Intoxication renders a confession involuntary when the intoxication is of a such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying. *State v. Stein, 874 so.2d 279.* In yet another case where a defendant was allowed to plead guilty to a lesser included offense. The court reasoned that, "while the defendant pled guilty to manslaughter, it determine that the facts of the case could have supported a verdict of guilty to second degree murder. However, the court also noted that the evidence of defendant's level of intoxication could negate his ability to form the specific intent to kill or inflict great bodily harm.

If intoxication is recognized by the courts of this state to this extent, then certainly given the testimony of the officers in the instant case, petitioner statement should not have been use

against him and his level of culpability should have been negated even the rape allegations were true. The officer's candidly testified that the accused appeared high, on drugs, drunk, or coming down off a high and thought he was in the Hollygrove area which was completed across the District. In addition thereto, he thought that he had been sleeping with his girlfriend Diane, when the person alleging rape was named Tina. Thus, it was clearly relevant that the accused was not conscious of his past reality nor his present because his contention is that he and the alleged victim had smoked rock cocaine before he fell asleep. **Given the above and aforementioned, your petitioner concluded that he is entitled to the Habeas Relief sought.**

CLAIM #2

### PETITIONER WAS INTOXICATED AT THE TIME OF HIS ARREST THUS HIS CONFESSION WAS NOT FREELY AND VOLUNTARILY GIVEN. THIS IS IN VIOLATION OF PETITIONER'S 5TH AMENDMENT RIGHTS

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to give incriminating testimony against ones self." The admissibility of a confession is a first instance question for the judge; and his conclusions as to the voluntariness of a confession will not be overturned on appellate review unless they are not supported by the evidence. *State vs Kersey, supra; State vs. Robinson, supra.*

In the present case, the state failed to give notice of its intent to use the confessions at defendants trial. Not only did the state fail to prove that the statements and/or admissions by the defendant were freely given. The state offered no evidence to ever prove that petitioner waived his Miranda Rights and (2) that defendant freely and voluntarily confessed to the crime charged.

A motion to suppress the statement and/or confession was filed on February 18, 1997.

14

See (Exhibit "A") on March 21, 1997, when the case was called for hearing on the motions. The state represented that no motions were pending . In its Bill of particulars the state said it would use the statement made by the defendant (see, Exhibit "B"). Defense counsel assented to this statement by his silence, and the trial court moved with the case.      Defense slept on his opportunity to defend the defendant to the best of his ability when he failed to challenge the voluntariness of the confession.

Furthermore, the state based the defendant's statement and/or confession as freely and voluntarily given based upon officer Daniel Jewels trial testimony. The Fourth Circuit Court of Appeal also based its decision on Officer Daniels Jewels testimony in affirming the defendant's conviction and sentence. However, the lower court acknowledge the Miranda warnings as never being given to the defendant..

The following is the testimony of officer jewel as it relates to defendants actions and confession to officers in pertinent part. T.Tr.pg. 23-24:

> Q. Now, once you removed the hammer from within the victims reach what, if anything , did you do next?
> A. We attempted to wake him up.   We positioned ourselves properly in case he did jump up. We woke him up. He was kind of out of it. I thought he was drunk or on drugs at the time, just the way he was acting really. He was kind of like coming off a high or something. We asked him, "What are you doing?" Because we really didn't know what was happening. I mean we get calls sometimes, and its just might be a domestic dispute, you know. They might be boyfriend and girlfriend.
> Q. Did you ask him anything?
> A. Yeah, "What are you doing."
> Q. Okay
> A. And he said something like, "Sleeping with my girlfriend," or something like that.   So I said, "Really?" "Where are you"? And he said in the Hollygrove area, which is completely across the district. I said, "What's your girlfriend's name?" He said, "Diane," or something like that to that affect. I believe it was Diane. We didn't

know what the lady's name was yet because we just went in to secure the building first. My partner or I--I can't remember who asked her, but it was asked, "what's your name?" and she said, "Tina"

In *State vs. Rankin, 357 so.2d 803, 804* the defendant was arrested, tried and convicted for a violation of *LSA-R.S. 14:37*. In *Rankin*, the defendant appeared to be intoxicated at the time of his arrest. Officer Erbelding testified that, at the time of Rankin's arrest he appeared to be intoxicated and disoriented, confused and irrational. On cross-examination of Officer Erbelding by the state concerning the Miranda Warning given at the time of his arrest, apparently as a part of a foundation for introduction of the oral confession in evidence. Officer Erbelding testified that he read the Miranda rights to defendant and asked if he wished to make a statement. The state then asked the officer, "Did he tell you he had shot," defense counsel objected stating that defendant was not capable of making a knowing and intelligent waiver of his constitutional rights at the time of his arrest due to his intoxicated condition.

In reversing Rankins, the court held, Officer Erbelding testified that at the time of his arrest, defendant appeared to be intoxicated and disoriented, confused and irrational. No other witness testified concerning defendant's condition at the time of his arrest. Based upon this evidence, **we are unable to say that the state has satisfied its burden of affirmatively proving that the defendant the time of arrest has free and voluntary after being advised of his Miranda rights**. On the contrary, the evidence is clear that the defendant was not capable of understanding his Miranda Rights and making a free and voluntary confession due to his intoxicated condition. Hence, the trial judge committed reversible error in admitting in evidence the oral confession made by the defendant at the time of his arrest.

**Unlike the defendant in *Rankin*, the defendant was not given any Miranda warnings.**

16

Nevertheless, just as the defendant in ***Rankin***, this defendant was intoxicated; in such a state of mind, the defendant certainly could not have been functioning as one with a sound mind. Officer Jewel recognized in his observation at the time of arrest that the defendant was unable to appreciate or understand what was going on. Officer Jewel ran afoul of the constitution by questioning the accused during his visibly intoxicated state and later using that to strengthen the prosecutions case. It was unequivocally set forth in Officer Jewels report and testimony, "He was kind of out of it. I thought he was drunk, high or something." Given that these are the words from an officer of the law, who witnessed first had, the impaired condition of the defendant, there is no reason to question the defendant's intoxicated state at the time of arrest.

In the instant case, the trial court never held a hearing to determine the voluntariness of the defendant's confession. It was clear error for the trial court to allow the state to go forth with its case, when it was substantiated through trial testimony that the defendant was not of sound mind or reliable rationale at the time of his arrest. This was and is still considered a violation of the defendant's constitutional rights to a fair trial and right not to be questioned while of lacking the mental capacity and understanding of a normal personal in the absence of narcotics and alcohol.

Federal Jurisprudence as set forth by the United States Supreme Court provides and has provided since ***Miranda*** that suspects need be informed of their right to remain silent at the time the are restricted in their liberty of movement. The officers in the instant case clearly testified that:

> A. We attempted to wake him up. ***We positioned ourselves properly in case he did jump up. We woke him up. He was kind of out of it. I thought he was drunk or on drugs at the time, just the way he was acting really. He was kind of like coming off a***

17

*high or something.   We asked him, "What are you doing?"*
Because we really didn't know what was happening. I mean we get
calls sometimes, and its just might be a domestic dispute, you
know.     They might be boyfriend and girlfriend.

The above and foregoing shows that the officers were not sure factual circumstance that
they had come into, thus they attempted to question your petitioner after having woke him up, so
as to discern whether they were just in the middle of a domestic dispute.  In this instance, the
officers would know that the suspects response could be used against him, however, the accused
in his intoxicated, drugged or drunken state of being would not.  In consequence thereto, it is
rudimentary that this was not a confession that would prove to be an informed, knowing and
intelligent waiver of one's right to remain silent.

## CONCLUSION

Petitioner prays that his conviction and sentence will be set aside and all such equitable
relief as deemed appropriate by this Court be rendered accordingly.  In the alternative, petitioner
requests evidentiary hearing to further develop this issue.

Respectfully Submitted:

NATHANIEL   LAMBERT #~~~~~
(*In Forma Persona*)
CCR Upper F - 7
Louisiana State Penitentiary
Angola, Louisiana 70712

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has this day been served upon the State of Louisiana, Orleans Parish District Attorney, and the District Court Judge, by placing a copy of the same in the U.S. Mail, properly addressed and postage being prepaid, on this _____ day of _____, 2006.

NATHANIEL LAMBERT, Petitioner

19

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**06-0721**
**SECT.S MAG 6**

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| NATHANIEL LAMBERT | BURL CAIN, WARDEN |

**(b)** County of Residence of First Listed Plaintiff:
(Except in U.S.. Plaintiff Cases)

County of Residence of First Listed Defendant:
**(In U.S. Plaintiff Cases Only)**
Note:  In land condemnation cases, use the location of the
tract of land involved.

**(c)** Attorneys (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in one box only)

[ ] 1 U.S. Government
    Plaintiff
[ ] 2 U.S. Government
    Defendant

[X] 3 Federal Question
    (U.S. Government Not a Party)
[ ] 4 Diversity
    (Indicate Citizenship of Parties
    in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only)   (Place an "X" in one box for plaintiff and one box for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated & Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. ORIGIN   (Place an "X" in one box only)

[X] 1 Original
    Proceeding
[ ] 2 Removed from
    State Court
[ ] 3 Remanded from
    Appellate Court
[ ] 4 Reinstated or
    Reopened
[ ] 5 Transferred from
    another district
    (Specify)
[ ] 6 Multidistrict
    Litigation
[ ] 7 Appeal to District
    Judge from
    Magistrate
    Judgment

## V. NATURE OF SUIT   (Place an "X" in one box only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **Personal Injury** | **Personal Injury** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportion- ment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks & Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury - | of Property 21USC881 | 28 USC 157 | [ ] 450 Commerce/ICC Rates/ etc. |
| [ ] 150 Recovery of Overpay- ment & Enforcement | [ ] 325 Assault Libel & Slander | Product Liability | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| Judgment | [ ] 330 Federal Employers' | [ ] 368 Asbestos Personal Injury Product | [ ] 640 R.R. & Truck | | [ ] 470 Racketeer Influenced |
| [ ] 151 Medicare Act | Liability | Liability | [ ] 650 Airline Regs. | **PROPERTY RIGHTS** | & Corrupt Organiz- ations |
| [ ] 152 Recovery of Defaulted | [ ] 340 Marine | **Personal Property** | [ ] 660 Occupational Safety/Health | | [ ] 810 Selective Service |
| Student Loans (excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 690 Other | [ ] 820 Copyrights | [ ] 850 Securities/Commod- ities Exchange |
| [ ] 153 Recovery of Overpay- ment of Veteran's | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | | [ ] 830 Patent | [ ] 875 Customer Challenge 12 USC 3415 |
| Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | | [ ] 840 Trademark | [ ] 891 Agricultural Acts |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | | | [ ] 892 Economic Stabili- zation Act |
| [ ] 190 Other Contract | | | | | [ ] 893 Environmental Matters |
| [ ] 195 Contract Product Liability | | | | **SOCIAL SECURITY** | [ ] 894 Energy Allocation Act |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | LABOR | | [ ] 895 Freedom of Informa- tion Act |
|---|---|---|---|---|---|
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate **Sentence** | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 900 Appeal of Fee Det- ermination Under |
| [ ] 220 Foreclosure | [ ] 442 Employment | [X] 530 Habeas Corpus: General | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | Equal Access to Justice |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 535 Death Penalty | [ ] 730 Labor/Mgmt. Reporting & | [ ] 863 DIWC/DIWW (405(g)) | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus & Other | Disclosure Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | |
| [ ] 290 All Other Real Property | | | [ ] 790 Other Labor Litiga- tion | **FEDERAL TAX SUITS** | |
| | | | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | | | [ ] 871 IRS - Third Party 26 USC 7609 | |

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

### 28 USC 2254   (NATURE OF SUIT: 530)

## VII. REQUESTED IN COMPLAINT:
Check if this is a **CLASS ACTION**
[ ] under F.R.C.P.23
DEMAND $
CHECK YES only if demanded in complaint:
**JURY DEMAND**   [ ] YES   [ ] NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
Judge _____
Docket Number _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD _____